McClure-Tritschler-Parrish Company v. Commissioner.
McClure-Tritschler-Parrish Co. v. Commissioner
Docket No. 9783.
United States Tax Court
1947 Tax Ct. Memo LEXIS 90; 6 T.C.M. (CCH) 1032; T.C.M. (RIA) 47254; September 22, 1947
*90 Roger K. Powell, Esq., 702 Huntington Bank Bldg., Columbus 15, O., for the petitioner. John O. Durkan, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency of $860.75 in declared value excess profits tax and a deficiency of $9,276.75 in excess profits tax in petitioner's return for the year 1942. The deficiencies are due in principle part to the refusal of the Commissioner to allow the deduction of a bad debt loss of $13,000, as reported by petitioner in its 1942 return. The petitioner contends that the Commissioner erred in refusing to allow this deduction. Findings of Fact The petitioner, McClure-Tritschler-Parrish Company, is an Ohio corporation with its business address in Columbia, Ohio. The return for the period involved was filed with the collector of internal revenue for the 11th district of Ohio, at Columbus. Petitioner is a wholesaler and sells hosiery, underwear and most types of work clothing, and also hard surface floor covering, to independent retailers in Ohio and surrounding states. It was engaged in this business in 1939 through 1942 and for years prior thereto. Prior to May 1, 1939, petitioner *91 had sold merchandise on extended credit to a retail store known as Curley's Five Cent and Dollar Store, at Wellston, Ohio. On or about that date petitioner was advised that the store had gone into receivership and that a relative of the owner of the store had been appointed as receiver. Thereupon petitioner called in its attorney, Cable M. Gibson, and advised him that it had a substantial debt due from the store and directed him to go to Wellston and look after petitioner's interest. Gibson went to Wellston and prepared and filed in the Common Pleas Court a motion to remove the receiver and to require immediate sale of the assets of the store. This motion was granted and the assets of the store were later sold to a representative of the petitioner in a receivership sale. The petitioner wanted the store kept in operation as a possible outlet for its merchandise. Gibson, its attorney, was a man who had had considerable experience in the handling of similar stores in bankruptcy and receivership proceedings. The petitioner entered into an arrangement with him whereby it agreed to lend him money to purchase the stock of a corporation to be formed to take over the assets which it had purchased *92 and to operate the store. Pursuant to this arrangement Gibson incorporated an Ohio company with an authorized capital of $25,000, called the Ace Dime Stores, Inc., and petitioner loaned Gibson $7,000, on his promissory note, to pay for 70 shares of its stock. The stock was issued to Gibson and he delivered it to petitioner as collateral security on his note. This note was as follows: "CONDITIONAL PROMISSORY NOTE "$7000.00 Columbus, Ohio, May 4th, 1939 "ON DEMAND after date for value received, without interest, I promise to pay to the order of The McClure-Tritschler-Parrish Company, the sum of SEVEN THOUSAND and 00/100 DOLLARS ($7000.00), conditionally as follows: "1. I am delivering concurrently with the signing of this note to the payee hereof, seventy (70) shares of the Capital Stock of Ace Dime Stores, Inc., as security for the within note, upon the following conditions: "(a) At any time, upon my request, the security will be accepted in full payment of this obligation, and this note surrendered to me. "(b) In the event of my death, the security for this obligation will become the payee's property in full payment of the obligation. "(c) At any time upon the payee's *93 request, they may return this note to me marked "Paid," and accept and keep the security in full payment thereof. "(d) My liability shall not exceed the surrender of the security on this note at any time, or to any person, firm, or corporation. "(e) This note may be pledged or used as security, so long as the terms and conditions herein contained are binding upon the person, firm, or corporation accepting the same as security." With the $7,000 which Gibson paid in for its stock Ace Dime Stores, Inc., purchased the assets and merchandise from the petitioner and proceeded to operate the business. A manager was employed to take charge of the store under the supervision of Gibson, the latter keeping the books and files of the company in his office at Columbus, Ohio. Gibson was president and treasurer, his wife vice-president, and his personal secretary was the secretary of the company. The company's bank account, except for minor sums, was kept in a Columbus, Ohio, bank. Between April 1, 1940, and November 15, 1940, Ace Dime Stores, Inc., opened three other stores in Ohio, one at Granville, one at Centerburg, and one at Belleville. A manager was employed to operate all of these stores *94 under the direct supervision of Gibson. The store at Wellston was closed in July, 1940. Gibson devoted a considerable part of his time to the supervision of the operation of Act Dime Stores, Inc., without remuneration from that corporation, although it paid him a small rental for the space occupied by its books and files in his law office. Ace Dime Stores, Inc., bought some of its merchandise from the petitioner and some from other wholesalers who were the competitors of petitioner. Petitioner did not exercise any active control over the operation of Ace Dime Stores, Inc. That was left to Gibson and others employed by him. During the years 1939 and 1940 petitioner extended credit to Ace Dime Stores, Inc., for merchandise purchased and money advanced to it and took five notes of the corporation totaling $6,000. In December, 1940, in order to enable Ace Dime Stores, Inc., to make a better financial statement, Gibson subscribed for, and was issued for cash an additional 60 shares of its capital stock. The petitioner advanced $6,000 to Gibson to pay for these shares. Ace Dime Stores, Inc., then repaid the $6,000 to the petitioner in satisfaction of its five notes totaling $6,000. Gibson *95 then gave the petitioner his note for $6,000, similar in every respect to the one for $7,000 heretofore mentioned, except that it was dated December 31, 1940, and recited the delivery of 60 shares of capital stock of Ace Dime Stores, Inc., as collateral security. The $13,000 of stock issued to Gibson and held by petitioner as collateral was all the stock ever issued by Ace Dime Stores, Inc. Under the provisions of the notes in question petitioner could at any time take over the stock and assets of the corporation and assume absolute control and management thereof. Ace Dime Stores, Inc., continued in business during most of the year 1942 but was not successful. In December, 1942, all of its assets were sold in liquidation and all general creditors paid off. After the payment of all general creditors Gibson, the sole stockholder, was left with $600, which he turned over to the petitioner together with all of the company's stock. The petitioner then canceled Gibson's notes, as prescribed by the conditions therein. The petitioner in its 1942 tax return claimed a deduction of $13,000 as a bad debt on account of the Gibson notes. This was disallowed by the Commissioner and the determination *96 of a deficiency in declared value excess profits tax in the amount of $860.75 and a deficiency in excess profits tax in the amount of $9,276.75 for the year ended December 31, 1942, resulted. Opinion LEMIRE, Judge. The evidence in this case indicates that the petitioner was the real owner of the stock of the Ace Dime Stores, Inc. The money invested in the capital stock of the company was all advanced by petitioner; and under the plan and agreement between it and Gibson there never was a moment after the delivery of the stock as collateral security for the Gibson conditional notes when petitioner could not have declared its ownershio thereof, canceled the notes, and assumed active control and management of the corporation. As a matter of fact Gibson, in explaining the provision in the notes enabling the petitioner to do so, said: "I've always attempted to keep my transactions with my clients that I represent, whether in dealing with them personally or in my capacity as an attorney, on the basis of where they controlled the matter entirely." As we view the situation in this case the petitioner, from the date of organization of Ace Dime Stores, Inc., until its liquidation, was in *97 a position to exercise the same control of the corporation as if the stock had been issued to it directly. Gibson personally had nothing invested in the corporation and had no personal obligation to pay the conditional notes involved. The collateral deposited belonged to the petitioner any time it elected to declare ownership and cancel the notes. This could be done without the consent of Gibson and petitioner was not obligated to pay Gibson anything whatsoever for the stock even though it might have value far in excess of $13,000, the face amount of the notes. Under the circumstances, we think that Gibson was under no legal liability to pay the notes and consequently no indebtedness existed. See , affirmed, (C.A.D.C.); ; ; (C.C.A., 1st Cir., 1941). Decision will be entered for the respondent.